RICHARD T. BOWLES (# 46234)
BRADLEY R. BOWLES (# 202722)
BOWLES & VERNA LLP
2121 N. California Boulevard, Suite 875
Walnut Creek, California 94596
Telephone: (925) 935-3300
Facsimile: (925) 935-0371

Attorneys for Plaintiff
QUALITY PACKAGING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALITY PACKAGING, INC. a California Corporation, doing business as NATURE KIST SNACKS,<br><br>Plaintiff,<br><br>v.<br><br>SNAK CLUB, a California Corporation,<br><br>Defendant.<br>_____<br>AND RELATED COUNTER-CLAIMS<br>_____ | Case No.: C03-5240 EDL<br><br>**DECLARATION OF ANTONIO R. SARABIA II IN OPPOSITION TO DEFENDANT SNAK CLUB'S MOTION FOR SUMMARY OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>DATE:   APRIL 1, 2005<br>TIME:   9:00 A.M.<br>CRTRM:  10 |

I, ANTONIO R. SARABIA II, declare:

1. I am an attorney at law duly licensed to practice before all of the Courts of the State of California and am admitted to practice in United States District Court for the Northern District of California. I have been retained by Plaintiff QUALITY PACKAGING, INC. a California Corporation, doing business as NATURE KIST SNACKS, (collectively referred to as "Plaintiff") to review and evaluate whether Defendant SNAK CLUB INC. ("Defendant") is infringing upon

-1-

DECLARATION OF ANTONIO R. SARABIA II IN OPPOSITION TO DEFENDANT SNAK CLUB'S MOTION
FOR SUMMARY OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Plaintiff's trademarks. In my opinion, Defendant's "Fresh Pack" mark, used in the retail sale of nuts, seeds and other snacks, is very likely to be confused with Plaintiff's "Fresh Pak" mark. I am also of the opinion that Defendant's striped packaging, also used in the retail sale of nuts, seeds and other snacks, is very likely to be confused with Plaintiff's Vertical Stripe mark.

2. In forming my opinions I considered the documents and sources of information listed on Exhibit "A". In addition, I relied on my knowledge of licensing and intellectual property obtained during my twenty years of work in these fields. As such, if called as a witness, I could and would competently testify to facts stated herein.

3. Since 1984 I have specialized in the evaluation and development of trademark and service mark portfolios for companies. I create worldwide trademark and service mark plans for companies. I have managed trademark and service mark portfolios which include thousands of marks. Attached hereto as Exhibit "B" is my resume. Attached hereto as Exhibit "C" is a list of my publications in the last ten years, my compensation and other cases in which I have given expert testimony in the last four years.

4. The trademarks at issue are Plaintiff's Vertical Stripe mark and "Fresh Pak" mark ("Trademarks.") An important point about the Stripe mark, is that the rights established by the registration are without regard to color. In other words, the registration provides protection for the stripe design regardless of whether the stripes are green, gold, purple or yellow. Plaintiff has used a variety of widths and colors of vertical stripes.

5. Plaintiff's Trademarks are used exclusively in the snack market. Both Trademarks are used on bags of nuts sold at convenience and other stores. The "Fresh Pak" mark is also used on bags of seeds. When considering the market impact of a trademark, defining the market is extremely important. Consumer goods cover a broad spectrum. At one end are expensive durable goods, like washers, dryers and cars, which last many years. At the other end of the spectrum are goods which

-2-

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

**DECLARATION OF ANTONIO R. SARABIA II IN OPPOSITION TO DEFENDANT SNAK CLUB'S MOTION FOR SUMMARY OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

are used quickly and cost little like candy and nuts. The snack market is at this end of the spectrum. Decisions about which snack to buy are made quickly because the snacks do not cost much and because they are used quickly. The low cost element is very important. While a consumer may spend a long time buying a car, the decision about which snack to buy is made in seconds because the cost is so low. In other words, a consumer is not going to spend much time on deciding about a snack because the value of the consumer's time would soon exceed the value of the snack.

6. The decision of which snack to buy is made so quickly that this type of purchase is known as an "impulse buy." When a consumer makes an impulse buy, the consumer just glances at the product. The consumer does not check the spelling on the container or count the number of stripes on it. They glance at the product and if the words and configuration are similar to what they recall, they grab it, pay for it and leave. Because of the impulse buy nature of the snack market, trademarks which are quickly recognized are more likely to be effective. When one uses a quick glance one is usually not reading, but rather recognizing a shape, pattern, design or configuration. The shape, design and configuration of products and packaging in the snack business are very important.

7. Plaintiff has used the Stripe mark for 31 years and the "Fresh Pak" mark for 40 years in connection with a variety of bagged nuts. Most of the bags are several ounces in size and are aimed at the snack market. Like most snacks, they can be found in convenience stores, gas stations and grocery stores. Plaintiff sells to wholesalers and distributors which resell to retail stores, and directly to retail stores such as Costco. Nuts with the Trademarks are sold throughout the country. Plaintiff has been selling to 7-Eleven for 40 years. Mozingo, 183 (depositions are referred to by the name of the deponent and the page).

8. Plaintiff participates in promotions with retail stores. These promotions feature advertisements of Plaintiff's nuts with the "Fresh Pak" and Stripe trademarks in newspaper inserts

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-3-

DECLARATION OF ANTONIO R. SARABIA II IN OPPOSITION TO DEFENDANT SNAK CLUB'S MOTION FOR SUMMARY OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

and grocery store coupon booklets. For example, in 1992 there was a promotion with more than 300 Lucky supermarkets in Northern California. Attached hereto as Exhibit "D" is an ad for Plaintiff's peanuts with both the Stripe and "Fresh Pak" marks visible. In addition to being at the Lucky stores, coupon booklets were delivered to about 6 million households in Northern California. As a result, in one week in April 1992, 2,058,480 two and a half ounce bags of peanuts, with the Trademarks, were sold. That was over $200,000 of retail sales of peanuts in seven days.

9. The Trademarks may be found on products in about 20,000 stores such as 7-Eleven, Costco, Ralph's, Alpha Beta, Hughes, Wal Mart, ARCO, Chevron, ConocoPhillips, Shell, USA Petro, Union 76, Texaco, BP, ExxonMobile, Circle K, Corner Stores, Johnny Quick Stores, Convenient Food Mart, Quick Stops, Express Mart, Rebel Oil, Phillips 66, C&W One Stop, Mini Mart, Express Lane and Qwik Stop.

10. In roughly the last 20 years (1986 - 2004), Plaintiff sold $58 million of nuts and seeds under the "Fresh Pak" mark and $11 million of nuts under the Stripe mark. The far more important figures are the retail sales and number of bags sold to consumers. In the last 9 years alone there has been $14,750,000 of nuts in over 20 million bags sold to the public with the Stripe mark. In the same period, there has been $154,727,000 of sales in over 94 million bags to the public under the "Fresh Pak" mark.

11. Another important factor is the visibility of the Trademarks. The Stripe mark and "Fresh Pak" are at convenience stores and gas stations across the nation. Almost every American between the ages of 15 and 65 goes into these stores many times a year. A trip into a convenience store or gas station selling Plaintiff's nuts is exposure to the Trademarks. Most of these stores are small enough that one cannot easily avoid seeing the displays of snack foods.

12. The "Fresh Pak" and "Fresh Pack" marks have identical meanings and sounds. Their appearances are very similar. The Stripe mark and Defendant's striped packaging are also extremely

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-4-

**DECLARATION OF ANTONIO R. SARABIA II IN OPPOSITION TO DEFENDANT SNAK CLUB'S MOTION FOR SUMMARY OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

similar. While one could count the number of stripes, measure the width of them, and analyze the color shading, this exercise would have no connection with how these are viewed by customers at a glance in a 7-Eleven. Customers with years of experience with nuts sold under the Stripe mark will assume that Defendant's striped packaging is the same.

13. Both Plaintiff and Defendant sell nuts and seeds. Defendant also sells candies. In fact, Plaintiff's products with "Fresh Pak" and the Stripe mark are often sold, not only in the same type of store, but in the exact same stores as Defendant's products using the "Fresh Pack" and striped packaging. For example, there are more than 500 7-Eleven stores in which the products compete. Mozingo, 183.

14. The consumer's likely wrong conclusion that the marks are all from the same company is reinforced by finding the products at the same store. Consumers rely on stores to provide uniform quality of products. For example, a consumer who is new to an area might prefer to shop at a 7-Eleven convenience store than an unknown local store based on his or her years of experience with the store. That is because the consumer depends on the level of quality that he or she has come to expect from 7-Eleven. The consumer relies on 7-Eleven to have safe, authentic products. The consumer does not expect to find counterfeit products in a 7-Eleven. The consumer will assume that "Fresh Pack" and "Fresh Pak" are related trademarks because 7-Eleven does not carry products which infringe trademarks. In other words, Defendant's "Fresh Pack" and striped packaging have the imprimatur of legitimacy because they are in stores like 7-Eleven.

15. Another important point is that Defendant sells a greater variety of snacks using the striped packaging and "Fresh Pack" marks than Plaintiff does with its marks. Defendant offers a large variety of candies as well as trail mix. The natural conclusion for the consumer to draw is that Defendant, with more numerous products in the marketplace, is more likely to be a correct,

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-5-

**DECLARATION OF ANTONIO R. SARABIA II IN OPPOSITION TO DEFENDANT SNAK CLUB'S MOTION FOR SUMMARY OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

authorized user of the Trademarks. In other words, surely the party with the most products is the legitimate user of the Trademarks.

16. It is significant that the market in which Plaintiff and Defendant compete is the convenience market in which buying decisions are made so rapidly. The consumer does not spend time looking for minute differences in labeling and packaging. The threshold of confusion is lower in this market.

17. There is another factor to consider. The "Fresh Pak" mark is usually on the same package as the Stripe mark, and the "Fresh Pack" mark is usually on the same package as Defendant's striped packaging. This means that even a more careful consumer who remembers that "Fresh Pak" goes with the Stripe mark is going to be fooled by "Fresh Pack" with Defendant's striped packaging. The juxtaposition of the marks further increases the likelihood of confusion. Just as the consumer who remembers "Nike" is accompanied by the Swoosh design is more likely to perceive a shoe with both marks as legitimate, so the consumer who sees "Fresh Pack" with Defendant's striped packaging is even more likely to assume it is the same as "Fresh Pak" with the Stripe mark.

18. To recap, confusion between "Fresh Pak" and "Fresh Pack" and the Stripe mark and Defendant's striped packaging is very likely for the following nine reasons: (1) the marks are very similar; (2) the marks are applied to the same types of snack products; (3) the packaging of the products with the marks is very similar; (4) the retail display of the products with the marks is very similar; (5) the products with the marks are sold at the same types of retail stores; (6) the products with the marks are sold at the same stores; (7) the products are sold in the impulse buy market; (8) there are more numerous products sold by Defendant; and (9) both Plaintiff and Defendant often use striped packaging with the word mark.

-6-

**DECLARATION OF ANTONIO R. SARABIA II IN OPPOSITION TO DEFENDANT SNAK CLUB'S MOTION FOR SUMMARY OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed on April 1, 2005 at Rolling Hills Estates, California.

_____
ANTONIO R. SARABIA II

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-7-
DECLARATION OF ANTONIO R. SARABIA II IN OPPOSITION TO DEFENDANT SNAK CLUB'S MOTION FOR SUMMARY OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION