ROBERT P. ANDRIS (SBN 130290)
ELISE R. VASQUEZ (SBN 201190)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street
Redwood City, CA 94063
Telephone: (650) 364-8200
Facsimile: (650) 780-1701

Attorneys for Defendant
SNAK CLUB

RICHARD E. LYON, JR. (SBN 46928)
HOLLAND & KNIGHT
633 W 5th Street, 21st Floor
Los Angeles, CA 90071-2040
Telephone: (213) 896-2510
Facsimile: (213) 896-2450

Attorneys for Defendant and Cross-complainant
SNAK CLUB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALITY PACKAGING, INC. a California Corporation, doing business as NATURE KIST SNACKS,<br><br>Plaintiff,<br><br>v.<br><br>SNAK CLUB, a California Corporation,<br><br>Defendant.<br><br>AND RELATED COUNTER-CLAIMS. | CASE NO. C03-5240 SI<br><br>**DEFENDANT SNAK CLUB'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION**<br><br>Date: April 22, 2005<br>Time: 9:00 a.m.<br>Ctrm: 10 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL ANALYSIS ....................................................................................................... 2

    A. Since Snak Club Uses The Words "Fresh Pack" To Describe The Quality Of Its Goods, As A Matter of Law, The Statutory Fair Use Defense Bars Liability ............................................................................................................... 2

        1. Snak Club's Descriptive Use Of The Phrase "Fresh Pack" Squarely Falls Within The Ambit Of The Fair Use Defense ................................... 2

        2. The Descriptive Nature Of Snak Club's Use Of The Phrase "Fresh Pack," As Well As The Fairness And Good Faith Of Snak Club's Use, Are Unequivocally Established By Reference To The Development Of The Method And Materials Used In Packaging Snak Club's Goods ..................................................................................... 4

    B. Because Snak Club's Packaging Is Markedly Dissimilar From Quality's Design Mark, As A Matter Of Law, No Reasonable Jury Could Find Infringement Of The Design Mark ................................................................ 6

    C. Alternatively, Since There Is No Triable Issue As To The Remaining Sleekcraft Factors, Quality's Claim For Trademark Infringement For Its Stripes Fails As A Matter Of Law........................................................................... 7

        1. Proximity Of The Goods, Marketing Channels Used And Likelihood of Expansion .................................................................... 7

        2. Evidence Of Actual Confusion ............................................................... 8

    B. Quality's Claim Of Unfair Competition Fails As A Matter Of Law Because There Is No Evidence That Snak Club Is Palming Off Its Products As Plaintiff's Products.......................................................................................... 10

III. CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

AMF Inc. v. Sleekcraft Boats
   (9th Cir. 1979) 599 F.2d 341 ................................................................................ 7

Ameritech, Inc. v. American Information Techs. Corp.
   811 F.2d 960 (6th Cir. 1987) ............................................................................. 11

Brookfield Communications v. Westcoast
   174 F.3d 1054 (9th Cir. 1999) ........................................................................ 6, 7

E & J Gallo Winery v. Gallo Cattle Company
   967 F.2d 1280 (9th Cir. 1992) ............................................................................ 6

E.R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc.
   536 F. Supp. 523 (S.D.N.Y. 1982) ..................................................................... 5

Nabisco Inc. v. Warner Lambert
   220 F.3d 43 (2nd Cir. 2000) ................................................................................ 6

Sands, Taylor & Wood Company v. The Quaker Oats Company
   978 F.2d 947 (11th Cir. 1992) ......................................................................... 2, 4

Therma-Scan, Inc. v. Thermoscan, Inc.
   295 F.3d 623 (6th Cir. 2002.) ........................................................................... 10

Wonder Labs, Inc. v. Procter & Gamble Co.
   728 F. Supp. 1058 (S.D.N.Y. 1990) ............................................................... 2, 5

## FEDERAL STATUTES

15 U.S.C. section 1115(b)(4) ......................................................................................... 2

Federal Rules of Civil Procedure, Rule 26 ................................................................... 5

Federal Rules of Evidence, Rule 702 ............................................................................ 8

Defendant Snak Club, Inc. hereby submits its Reply Brief in Support of its Motion for Summary Judgment or in the Alternative Summary Adjudication.

## I.

## INTRODUCTION

Argument and conclusory allegations do not create triable issues of material facts – admissible evidence does. The Opposition is based on misplaced legal analysis and inadmissible evidence. The undisputed material facts conclusively establish that Snak Club is entitled to judgment in its favor on all causes of action set forth in the instant complaint.

First, Snak Club is entitled to judgment in its favor based on the statutory fair use defense. Plaintiff has failed to set forth any evidence that Snak Club's use of the phrase "Fresh Pack" is not descriptive. Snak Club's use of the phrase "Fresh Pack" advertises both the freshness of the product being sold and the packaging which allows the product to stay fresher than its competitors. The argument that Snak Club's products are not "fresher" but are just "less-rancid" is specious at best.

Second, the Quality design mark cannot be infringed by a package with four times as many stripes and none of the other design features found in the trademark at issue. As a matter of law, no reasonable jury could conclude that there is a likelihood of confusion between the Quality design and the design used by Snak Club.

Intentionally ignoring the principle that, where there is no similarity in the marks, there can be no likelihood of confusion, plaintiff attempts to show a potential for confusion under additional Sleekcraft factors. Nevertheless, plaintiff fails to establish that Quality competes in the same market as Snak Club or that it has any evidence of actual confusion. Plaintiff admitted that, while it and defendant sell similar products, they do not sell to the same marketing channels. Further, plaintiff has no market survey or witness to attest to confusion between the products. Since the undisputed facts establish that neither of plaintiff's trademarks are infringed by the Snak Club package, Snak Club is entitled to summary judgment in its favor on all causes of action set forth in the instant complaint.

///

## II.

## LEGAL ANALYSIS

### A. Since Snak Club Uses The Words "Fresh Pack" To Describe The Quality Of Its Goods, As A Matter of Law, The Statutory Fair Use Defense Bars Liability

As to Quality's "Fresh Pak" mark, Snak Club is entitled to judgment in its favor, based on the statutory affirmative defense of fair use, 15 U.S.C. section 1115(b)(4). Snak Club's use of the phrase "Fresh Pack" falls within the coverage of the statutory fair use defense because: (1) that phrase is used descriptively, not as a mark; and, (2) Snak Club's use is fair and in good faith.

#### 1. Snak Club's Descriptive Use Of The Phrase "Fresh Pack" Squarely Falls Within The Ambit Of The Fair Use Defense

Since Snak Club is using the phrase "Fresh Pack" as a descriptive phrase, not as a trademark, Snak Club is entitled to judgment of non-infringement based on this affirmative defense. Plaintiff, however, seeks to defeat summary judgment in this regard by requesting this court determine Snak Club uses "Fresh Pack" as a stand alone mark.

In support of its argument that Snak Club's uses "Fresh Pack" as a stand alone mark and, therefore, not a descriptive phrase, plaintiff primarily relies on two cases: Wonder Labs, Inc. v. Procter & Gamble Co., 728 F. Supp 1058 (S.D.N.Y. 1990) and Sands, Taylor & Wood Company v. The Quaker Oats Company, 978 F. 2d 947 (11th Cir. 1992). Here, plaintiff claims that Snak Club's use is the same as the defendant in Sands and not Wonder Labs.

In Wonder Labs, defendant's use of "The Dentists' Choice" was found to be a fair use because at no time did the phase "The Dentists' Choice" ever appear without the prominently displayed CREST trademark. (Id. at 1061.) The court determined that the words were used in their primary sense to describe an important attribute of the CREST product – that it was recommended by dentists. (Id. at 1064.) The court found that the phrase was not used to identify the source of the product. (Id.) Rather, the CREST mark, prominently displayed in all CREST advertising, clearly served as the indictor. Based on these factors, the court found defendant's use was not a trademark use but rather a descriptive or explanatory use. (Id.) The same factors found in the Wonder Lab case are found in the case at bar. As such, the fair use defense applies here.

1    In the case at bar, the term "Fresh Pack" is not a stand-alone term within the court's
2    meaning in Wonder Labs. No reasonable juror could find that Snak Club is using the term "Fresh
3    Pack" in its trademark sense. Like the phrase "The Dentists' Choice," the phrase "Fresh Pack" is
4    not source identifying. As was the case in Wonder Labs, the phrase "Fresh Pack" is always used
5    in conjunction with defendant's trademarks "SNAK CLUB" and "A Treat In Itself."

 

19   Specifically, when looking at the SNAK CLUB® packaging, it cannot be disputed that the
20   term "Fresh Pack" never appears without the defendant's SNAK CLUB® trademark. Further, a
21   prominent feature on the packaging consists of a large bold print text which describes specifically
22   the contents of the package. For example, "HONEY CASHEWS" or "YOGURT NUT MIX".
23   Because they are descriptive, they cannot serve as trademarks. Immediately above the description
24   of the contents, also in bold print, is the trademark "SNAK CLUB®" and immediately below the
25   product description is the trademark "A TREAT IN ITSELF". The upper right and left corners of
26   the package contain phrases which describe qualities of the goods in the package. In the left
27   upper corner, the package contains the phrase "Fresh Pack"[1]. In the right upper most corners, the

---

[1] It should be noted that defendant uses the correct spelling of the phrase at issue, not the intentionally misspelled

1  packages bear the phrases "BEST VALUE" or "Snack Size".

2  On the other hand, in Sands, Taylor & Wood Company v. The Quaker Oats Company, 978 F. 2d 947 (11th Cir. 1992), the court affirmed summary judgment in favor of plaintiff because defendant clearly used plaintiff's mark "Thirst Aid" as part of its slogan. The court observed that "Gatorade" clearly identified the product as being from a particular source and defendant's use of "Thirst Aid" further identified the product as being from a particular source. (Id. at 953.) The court noted that "Thirst Aid" was "the most prominent feature of some of defendant's advertising." (Id.) Each of the ads included the statement "Gatorade is THIRST AID". (Id.) The court found, therefore, that the way in which defendant used the words "Thirst Aid" created the impression that the slogan was uniquely associated to Gatorade. (Id.)

Conversely, Snak Club's use of "Fresh Pack" is not the most prominent feature of defendant's packaging. It does not appear in its slogan "A TREAT ITSELF." Nor does "Fresh Pack" appear in the same sentence as its SNAK CLUB mark. In fact, the SNAK CLUB® mark, its slogan A TREAT FOR ITSELF, and the name of the product, for example, SALTED CASHEWS are predominately featured on its packaging. Defendant's use of "Fresh Pack," therefore, does not create an impression that the term "Fresh Pack" is associated with SNAK CLUB®. Snak Club's use of "Fresh Pack" merely describes the nature of the product contained it is packaging.

### 2. The Descriptive Nature Of Snak Club's Use Of The Phrase "Fresh Pack," As Well As The Fairness And Good Faith Of Snak Club's Use, Are Unequivocally Established By Reference To The Development Of The Method And Materials Used In Packaging Snak Club's Goods

Plaintiff argues that the development of the method and material employed by Snak Club is "suspect" and, therefore, its fair use of Fresh Pack is not a good faith use. (Plaintiff's Opp. p. 9:5-6.) This argument, however, is based on inadmissible evidence and a misplaced play on words in an attempt to show Snak Club has "concocted" a story regarding the effects of its gas-flushed and sealed products. Arguments, however, do not create triable issues – admissible

---

version employed by plaintiff. Because of its descriptive nature, it is questionable whether the PTO would have allowed the registration of the phrase "Fresh Pack". That leads to the question of whether plaintiff intentionally chose its mark to obtain registration.

1 evidence does. Snak Club is entitled to judgment as a matter of law.

2 First, plaintiff relies on a page from a manual allegedly written by ExxonMobile to show
3 that the gas-flushing process only extends the "shelf-life" of a product.[2]

4 The purpose of gas-flushing products is to capture the freshness of the product at the time
5 of sealing. By capturing the freshness of the product, defendant can increase its sell by date from
6 5 to 6 months to 7 to 9 months. (Deposition of Masoud Nabavi, pp 62:11-13; 62:27-63:6,
7 attached as Exhibit K to Vasquez Reply Decl. ¶2.) Again, by definition, capturing the freshness
8 of a perishable product and extending its shelf life means keeping the product "fresher." Making
9 the product "less-rancid" means keeping the product "fresher." There is no meaningful dispute
10 over whether the process and method by which defendant packages its products increases the
11 freshness of defendant's products at a given point in time after packaging. The freshness of a
12 product is, without question, a desirable quality to customers. Since defendant's products are, in
13 fact, fresher than a product of similar age packaged in the traditional fashion, defendant's use of
14 the phrase "Fresh Pack" is in good faith as a matter of law.

15 Second, plaintiff argues that since Quality advised Snak Club of its use of its mark "Fresh
16 Pak," Snak Club's use of "Fresh Pack" is not a good faith use. Defendant's actions prior to the
17 commencement of an trademark infringement action; i.e., that defendant did not abandon its
18 project at plaintiff's suggestion, does not itself evidence lack of good faith. (Wonder Labs, supra,
19 728 F. Supp 1058 at 1064.)

> Although trademark registration concededly puts the world on constructive notice of the plaintiff's rights, that does not preclude use of the words contained in plaintiff's registered mark in their primary sense. "In choosing a highly descriptive mark, [the plaintiff] acted at its peril; where a second comer chooses a descriptive work to name its product, more than simple knowledge of the prior use is needed to show intent to misappropriate the good will." (Id. citing E.R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc. 536 F. Supp 523, 532 (S.D.N.Y. 1982).)

25 Plaintiff cannot and has not presented sufficient evidence to negate any of the elements of
26 the fair use defense. Snak Club is entitled, therefore, to judgment as a matter of law with respect

---

[2] See Defendant's objection, filed under separate cover as to the inadmissibility of this evidence as evidence not produced prior to the fact discovery deadline as required by Federal Rules of Civil Procedure, Rule 26.

RC1/371840.1/ERV - 5 - DEF SNAK CLUB'S REPLY BRIEF IN SUPP OF MTN FOR SUMM JUDGMENT - C03-05240 SI

1  to plaintiff's "Fresh Pak" trademark.

2  **B. Because Snak Club's Packaging Is Markedly Dissimilar From Quality's Design Mark, As A Matter Of Law, No Reasonable Jury Could Find Infringement Of The Design Mark**

4  Snak Club is entitled to a judgment of non-infringement on Quality's claims regarding the striped design mark.[3] The design employed by Snak Club is so distinct from that embodied in Quality's package design, as a matter of law, judgment of non-infringement is required.

7  The core element of infringement is the likelihood of confusion; i.e., whether the similarity of the marks is likely to confuse consumers about the source of the product. (E & J Gallo Winery v. Gallo Cattle Company, 967 F.2d 1280, 1290 (9th Cir. 1992).)

> "Pepsi" does not infringe Coca Cola's "Coke." Nothing further need be said. (Brookfield Communications v. Westcoast, 174 F.3d 1054 (9th Cir. 1999); see also, Nabisco Inc. v. Warner Lambert, 220 F.3d 43, 46 (2nd Cir. 2000) [Analysis of "similarity of the marks" can be "dispositive and will warrant summary judgment" for the defendant "if the court is satisfied … that the marks are so dissimilar that no question of fact is presented"].)

14  The <u>only</u> similarity between the designs employed by the parties is that they both contain what can be described as vertical stripes. Nevertheless, that is where the similarities end. All three aspects of the Quality design mark are absent from the Snak Club package. The Snak Club package does not contain wide stripes, an oval viewing window or a peanut-outline design on its package.

19  Specifically, Quality's stripes are much wider than Snak Club's, Quality employs 15 alternating black and white stripes while Snak Club's packages contain more than 60 alternating stripes. Quality's stripes are so thick, they could properly be called vertical "bars". And, Snak Club's stripes could be described as vertical "lines." Without resort to such word games, the fact remains that any objectively reasonable comparison demonstrates the packages are markedly dissimilar. Plaintiff only owns a monopoly over its package, not the use of stripes, bars or lines.

25  Moreover, the Snak Club package does not contain the prominent horizontal oval found in the Quality mark. Finally, the design which borders the phrases "Fresh Pack", "UNSALTED"

---

[3] As fully described in defendant's moving papers, this is the vertical stripe design with a prominent horizontal oval. When used on plaintiff's packaging the horizontal oval creates a cellophane window in which the consumer can see plaintiff's product.

1  and "Peanuts" in the Quality design is not found anywhere in the Snak Club packaging. Where,
2  as here, no reasonable juror could conclude that the defendant's design could be confused for the
3  plaintiff's mark, the defendant is entitled to a judgment of non-infringement as a matter of law.
4  Where there is no similarity of the marks, there can be no likelihood of confusion.

### C. Alternatively, Since There Is No Triable Issue As To The Remaining Sleekcraft Factors, Quality's Claim For Trademark Infringement For Its Stripes Fails As A Matter Of Law

Despite the fact that the marks are dissimilar and as such, summary judgment is warranted as to non-infringement of plaintiff's "design" mark, plaintiff attempts to manufacture a triable issue by analyzing the remaining Sleekcraft factors. (AMF Inc. v. Sleekcraft Boats (9th Cir. 1979) 599 F.2d 341, 348-49.) Even under this examination, however, still plaintiff cannot defeat summary judgment.

#### 1. Proximity Of The Goods, Marketing Channels Used And Likelihood of Expansion

Plaintiff relies on the fact that likelihood of confusion involving competing products in competing markets is more probable than not. (Brookfield, supra, 174 F.3d 1036, 1056.) Plaintiff admits, however, that although both companies sell similar products, they do not market to identical marketing channels. (Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p. 17:8; see also, Deposition of Ronald Mozingo, pp. 173:22-174:16, attached as Exhibit L to the Declaration of Elise R Vasquez in Support of Defendant's Reply In Support of Defendant's Motion for Summary Judgment ¶3. (Vasquez Reply Decl.).)

Mozingo admitted that Quality was not in Snak Club's market and only because its sales were "softer" towards the end of 2002, he examined other markets in which to expand its snack line. (Exh. L, pp 175:19-176:14) Specifically, since it was not already in Snak Club's markets, Quality saw the opportunity to target Snak Club's space. (Id.) It decided, therefore, to expand its snack food line to include the exact same products sold by Snak Club. (Exh. L, pp 125:8-12.) Quality, however, never launched its new products into Snak Club's market. Since Quality is yet to launch its alleged new line into Snak Club's marketing channels, this factor falls in favor of Snak Club as a matter of law.

### 2. Evidence Of Actual Confusion

Plaintiff has set forth no evidence of actual confusion. Although plaintiff represented to this court and to Snak Club's counsel that it intended to conduct a market survey to negate defendant's assertion that plaintiff has failed to establish actual confusion, it has not presented such a survey in its opposition.[4] (Exh. L, pp 235:3-8.) Plaintiff claims to have several witnesses that have testified that they were confused by the similarities between Quality's products and Snak Club products. As set forth below, however, these witnesses testified to the contrary. Plaintiff has failed to show any evidence of actual confusion between it and defendant's products.

On June 23, 2004, defendant propounded discovery requesting all facts to support its contention that defendant's alleged infringement has in fact caused actual confusion. On July 26, 2004, plaintiff responded accordingly:

> Snak Club and Nature Kist are in the business of selling processed seeds and nuts. In that capacity, Nature Kist markets, distributes, manufacturers and sells processed seed and nut products using the name "Fresh Pak" in conjunction with vertical stripes on its packaging. Similarly, Snak Club markets, distributes, manufactures and sells identical processed seed and nut products using the name "Fresh Pack" in conjunction with vertical stripes on its packaging. **During conversations over the telephone and in person, several Nature Kist customers, wholesales and distributors informed Plaintiff that they were confused by the similarities between Nature Kist's packaging and Snak Club's packaging.**
> [Emphasis added] (Exhibit M attached to Vasquez Reply Decl. ¶4.)

At his deposition, however, when asked if he had any evidence of any instances where someone called, advised or communicated to him or anyone at Quality that they were confused as to the origin of defendant's products, Quality's President testified: "Oh, I would say none." (Exh. L, pp 191:24.) Specifically:

> Q: ... Do you know of any instances where someone has called or advised or communicated with anybody that – and questioned whether there's an affiliation between Snak Club and Nature Kist?

---

[4] Plaintiff filed an *ex parte* motion to extend its time to oppose the pending summary judgment motion for the primary purpose of providing the results of a market survey to support its claim of there being a likelihood of confusion. Plaintiff failed to produce any survey in this regard. From this, it is reasonable to draw the inference that, either it never intended to conduct such a survey or that it did and the results showed no likelihood of confusion. Nevertheless, plaintiff relies on Antonio R. Sarabia II opinion in its attempt to raise a triable issue as to the likelihood of consumer confusion. See Defendant's objection, filed under separate cover, as to the admissibility of Sarabia's opinions under Fed. R. Evid., Rule 702.

A: Not to my knowledge.

…

Q: And as you sit here today, do you know … how many calls you received, or know have been reported to your wholesaler, brokers DSDs and the retailers, how many calls, if any, have been received claiming that they're confused between Quality Packaging FreshPak product and the Snak Club product?

A: I don't know.

Q: But it's one from Dennis and one, you think, from the 7-Eleven people, right?

A: No.

Q: …. Just one from Dennis?

A: Dennis does not remember the name of the store he was in front of.

Q: I'm not asking the name of the store. I'm just asking how many calls you believe you received saying "We're confused" or "such and such was confused with the product."

A: Oh. I would say none. (Exh. L, pp 142:17-22, 191:6-24.)

Similarly, defendant asked plaintiff to identify all witnesses with knowledge of the facts to support its claim that defendant's alleged infringement has caused confusion between its products and defendant's products. Plaintiff identified, Ron Mozingo, Dennis Perkins, Larry Welborn, Chris Cameron, Lou Lodi, Earl Smith and Cliff LaFreniere. None of these witnesses, however, testified at their depositions that they knew of no instances where the consumer was actually confused between the products.

For example, Perkins did not recall specifically telling Mozingo that, as a result of Snak Club's use of "Fresh Pack" he believed Quality owned Snak Club. (Deposition of Dennis Perkins pp 57:19-22 attached as Exhibit N to Vasquez Reply Decl. ¶5.) Further, Mr. Lodi, who sold Quality's products at a booth in a flea market, testified that during the nine month period he sold Quality's product, he was never approached by a customer who was confused between the Quality product he was selling and a product made by Snak Club. (Deposition of Lou Lodi, pp 38:5-10 attached as Exhibit O to Vasquez Reply Decl. ¶6.) Similarly, no customer approached him with the Quality product and said "Oh, I thought this was – I thought you were selling Snack

1  [sic] Club products" or that they were "looking for the other Fresh Pack company." (Id.,
2  pp 44:11-25.)

3        Likewise, according to Earl Smith, who has been a broker for Quality for 19 years, no one
4  has approached him and expressed confusion between defendant and plaintiff's product. In fact,
5  despite the fact that Mozingo had asked Mr. Smith to "step up to the plate" for him and testify,
6  Smith admitted to Mozingo after his deposition, he "didn't do [him] a damn bit of good".
7  (Exh. L, pp 149:2-10.)

8        Finally, even in stores where both products are sold, there is no evidence of confusion.
9  Mozingo testified that 7-Eleven and Johnny Quick stores sell both Quality and Snak Club
10 products. (Exh. L, pp 189:24-190:18.) He had no evidence, however, that an employee or a
11 customer of a 7-Eleven purchased a Snak Club snack and was confused between it and Quality's
12 snacks. (Id., pp 186:19-187:9.)

13       Based on the foregoing, plaintiff has not and cannot present sufficient evidence that
14 defendant's use of pinstripes on its packaging causes a likelihood of confusion. Defendant,
15 therefore, is entitled to judgment as a matter of law as to non-infringement of plaintiff's design
16 mark.

17 **B. Quality's Claim Of Unfair Competition Fails As A Matter Of Law Because There Is No Evidence That Snak Club Is Palming Off Its Products As Plaintiff's Products**
18

19       Since plaintiff's design mark is markedly dissimilar to defendant's use of pinstripes and
20 Snak Club places its own mark predominately in the center of its packaging, there is no evidence
21 that it is trying to palm its snacks off as Quality's snacks. Plaintiff's claim for unfair competition,
22 therefore, fails as a matter of law.

23       Plaintiff argues that defendant is "palming off" its products as plaintiff's products because
24 defendant, the junior user misleads the public about the source of its goods or services, it led
25 consumers to purchase the defendant's products in the belief that they were buying the plaintiff's.
26 (Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623, 630 (6th Cir. 2002.) Since "palming off"
27 requires similar marks on directly competing goods or services so as to cause confusion over their
28 origin, as set forth above, plaintiff cannot and has not set forth any evidence to support this claim.

1  (See <u>Ameritech, Inc. v. American Info. Techs. Corp.</u>, 811 F.2d 960, 964 (6th Cir. 1987).)
2  Defendant is, therefore, entitled to judgment as a matter of law as to plaintiff's unfair competition
3  claim.

## III.

## CONCLUSION

As set forth above, the undisputed facts establish that neither of plaintiff's trademarks are infringed by the Snak Club package. Snak Club's package uses the phrase "Fresh Pack" descriptively to advertise both the freshness of the product being sold and the packaging which allows the product to stay fresher than its competitors. Likewise, the Quality design mark cannot be infringed by a package with four times as many stripes and none of the other design features found in the trademark at issue. As a matter of law, therefore, Snak Club is entitled to judgment in its favor on all causes of action set forth in the instant complaint.

Dated: April 8, 2005

Respectfully submitted,

ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
ROBERT P. ANDRIS
ELISE R. VASQUEZ
Attorneys for Defendant
SNAK CLUB