```
 1  ROBERT P. ANDRIS (SBN 130290)
    ELISE R. VASQUEZ (SBN 201190)
 2  ROPERS, MAJESKI, KOHN & BENTLEY
    1001 Marshall Street
 3  Redwood City, CA  94063
    Telephone:   (650) 364-8200
 4  Facsimile:   (650) 780-1701

 5  Attorneys for Defendant
    SNAK CLUB
 6
    RICHARD E. LYON, JR. (SBN 46928)
 7  HOLLAND & KNIGHT
    633 W 5th Street, 21st Floor
 8  Los Angeles, CA 90071-2040
    Telephone:   (213) 896-2510
 9  Facsimile:   (213) 896-2450

10  Attorneys for Defendant and Cross-complainant
    SNAK CLUB
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALITY PACKAGING, INC. a California Corporation, doing business as NATURE KIST SNACKS,<br><br>Plaintiff,<br><br>v.<br><br>SNAK CLUB, a California Corporation,<br><br>Defendant.<br><br>AND RELATED COUNTER-CLAIMS. | CASE NO. C03-5240 SI<br><br>**DEFENDANT SNAK CLUB'S OBJECTION TO THE OPINIONS OF ANTONIO R. SARABIA II AS INADMISSIBLE PURSUANT TO FEDERAL RULES OF EVIDENCE, RULE 702** |

Defendant Snak Club, Inc. hereby objects to the opinions of Antonio R. Sarabia II presented by plaintiff Quality Packaging, Inc. In Opposition to Defendant's Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

///

///

///

# I.

# INTRODUCTION

Desperate times leads to desperate measures. And it is apparent that here plaintiff has resorted to desperate measures by submitting the opinion of Mr. Antonio Sarabia II in support of its opposition to defendant's motion for summary judgment. Sarabia's opinions, however, are devoid of imprimatur reliability and are, therefore, in admissible expert opinion pursuant to Federal Rules of Evidence, Rule 702.

The courts are charged with the responsibility that before it reaches a conclusion of whether there is a question of disputed fact, the evidence submitted is admissible. Specifically, in the case of expert opinion, the courts act as gatekeepers to ensure that expert opinions are based on reliable and tested methodologies and are not simply improper extrapolation of a series of unsupported facts. An opinion, as is the case here, offered along with insufficient facts or data cannot be the product of reliable principles and methods and renders the opinion inadmissible.

In the case at bar, it is the consuming public's perception which is at issue, and not that of a trademark lawyer. Here, Sarabia opines that there is a likelihood of confusion between plaintiff's and defendant's products. Sarabia has no expertise with regards to consumer confusion. He evaluates and develops service mark portfolios for companies. For this case, he has not spoken with a consumer nor has he conducted or reviewed a market survey as to the parties' particular products. His opinion is, therefore, not based upon sufficient facts or data. Consequently, his opinion cannot be the product of reliable principles and methods. Absent a clear explanation of the manner in which Sarabia's opinions were reached, they are inadmissible.

# II.

# FACTUAL BACKGROUND

Plaintiff filed an *ex parte* motion to extend its time to oppose the pending summary judgment motion for the primary purpose of providing the results of a market survey to support its claim of there being a likelihood of confusion. Plaintiff failed to produce any survey in this regard. From this, it is reasonable to draw the inference that, either it never intended to conduct such a survey or that it did and the results showed no likelihood of confusion. Nevertheless,

1  plaintiff relies on Antonio R. Sarabia II opinion in its attempt to raise a triable issue as to the

2  likelihood of consumer confusion. Specifically, plaintiff is relying on Sarabia's opinion that:

> ...confusion between "Fresh Pak" and "Fresh Pack" and the Stripe mark and Defendant's striped packaging is very likely for the following nine reasons: (1) the marks are very similar; (2) the marks are applied to the same types of snack products; (3) the packaging of the products with the marks is very similar; (4) the retail display of the products with the marks is very similar; (5) the products with the marks are sold at the same types of retail stores; (6) the products with the marks are sold at the same stores; (7) the products are sold in the impulse buy market; (8) there are more numerous products sold by Defendant; and (9) both Plaintiff and Defendant often use striped packaging with the word mark. (Declaration of Antonio R Sarabia II In Opposition to Defendant Snak Club's Motion for Summary or, in the Alternative, Summary Adjudication ¶ 18. ("Sarabia Decl.")

According to his declaration, Saraba relied on his review of the pleadings in this case, selected deposition testimony, selected discovery responses and made "some visits to retail stores." (See Exhibit A attached to Sarabia Decl. ¶ 2.)

It is the consuming public's perception which is at issue, and not that of a trademark lawyer. Sarabia has no expertise with regards to consumer confusion. He evaluates and develops service mark portfolios for companies. (Sarabia Decl. ¶ 3.) He has no experience with consumers, with consumer surveys, with comparing consumer products and what constitutes consumer confusion. He has not spoken with a single consumer. He has not conducted or reviewed a market survey as to the parties' particular products. Notably, he did not review the transcripts of the witnesses identified by plaintiff as having knowledge of consumer confusion. This calls into question the sufficiency of the facts and data Sarabia relied on in reaching his opinions.

### III.

### LEGAL ANALYSIS

A. **Sarabia's Opinion Is Inadmissible Because He Relies On Insufficient Facts And Data Rendering The Court Unable To Evaluate Whether His Opinions Are A Product Of Reliable Principles And Methods As Required By Federal Rules of Evidence, Rule 702**

In <u>Daubert</u>, the Court charged trial judges with the responsibility of acting as gatekeepers

1 to exclude unreliable expert testimony, and the Court in <u>Kumho</u>, clarified that this gatekeeper
2 function applies to all expert testimony, not just testimony based in science. (<u>Daubert v. Merrell
3 Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993); <u>Kumho Tire Co. v. Carmichael</u>, 119 S.Ct. 1167
4 (1999); see also <u>McKendall v. Crown Control Corp.</u>, 122 F.3d 803 (9th Cir. 1997).)

5       An opinion offered along with insufficient facts or data cannot be the product of reliable
6 principles and methods. Federal Rules of Evidence, Rule 702 establishes a standard of
7 evidentiary reliability and requires valid connection to pertinent inquiry as a precondition to
8 admissibility; where testimony's factual basis, data, principles, methods, or their application are
9 called sufficiently into question, a trial judge must determine whether testimony has a reliable
10 basis in knowledge and experience of relevant discipline. (<u>Kumho Tire Co. v Carmichael</u>, 119
11 S.Ct. 1167 (1999).)

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. (Fed. R. Evid. R 702.)

17       In this case, Sarabia's opinion is offered along with insufficient facts or data. His
18 opinions, therefore, cannot be the product of reliable principles and method so as to pass muster
19 under 702. For example, even if an expert has not tested the hypothesis he is testifying to, while
20 this is considered an extremely negative factor, he can point to another type of investigation or
21 analysis that substantiates his conclusions. (See <u>Tassin v. Sears, Roebuck & Co.</u>, 946 F. Supp.
22 1241 (M.D. La. 1996).)

23       In <u>Tassin</u>, plaintiff was injured while operating a power saw, and proffered an engineer
24 who concluded that alternative designs were safer, and that the defendant failed to provide
25 adequate warnings. Judge Vance analyzed the admissibility of this testimony in light of <u>Daubert</u>
26 as follows:

> It may well be that an engineer is able to demonstrate the reliability of an alternative design without conducting scientific tests, for example, **if he can point to another type of investigation or**

**analysis that substantiates his conclusions.** For example, an expert might rely upon a review of experimental, statistical, or other technical industry data, or on relevant safety studies, products, surveys, or applicable industry standards. He could also combine any one or more of these methods with his own evaluation and inspection of the product based on experience and training in working with the type of product at issue. **The expert's opinion must, however, rest on more than speculation, he must use the types of information, analyses and methods relied on by experts in his field, and the information that he gathers and the methodology that he uses must reasonably support his conclusions. If the expert's opinions are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches, then [testing of an alternative design is not absolutely required]** [emphasis added] Tassin v. Sears, Roebuck & Co., 946 F. Supp. 1241, 1247-1248 (M.D. La. 1996)

Applying these standards to the facts, the Tassin Court excluded the expert's testimony on certain alternative designs based on parts that he had never tested or even seen, and the safety of which was not supported by the tests of others nor by any relevant literature. (Tassin, supra, at 1251-1252.) The Court held, however, testimony as to another alternative design admissible, where the expert had actually conducted some testing, and where the safety of the product received support from the relevant literature. (Id., at 1251.)

Conversely here, since Sarabia did not test his hypothesis that there is a likelihood of confusion between defendant's and plaintiff's products, to be admissible Sarabia's opinion must rest on more than speculation. He must use the types of information, analyses and methods relied on by experts in his field, and the information that he gathers and the methodology that he uses must reasonably support his conclusions.

According to Sarabia, plaintiff's and defendant's marks are very similar and because they are very similar the consumer would be confused. Similarly, he states that the marks are applied to the same snacks and because the marks are applied to the same snacks, the consumer would be confused. In order, however, to determine what is in the minds of the consuming public, a person who renders an opinion regarding the consuming public's perception of plaintiff's and defendant's products, must at least ask the consuming public or have some industry data in which to properly extrapolate his opinion. Sarabia has not spoken to, or interviewed a consumer. Nor

has he conducted or reviewed a market survey.[1] Notably, Sarabia did not review the transcripts of the witnesses identified by plaintiff as having knowledge of consumer confusion. His opinions are devoid of any type of investigation or analysis that substantiates his conclusions.

Further, Sarabia has no expertise with regards to consumer confusion. He evaluates and develops service mark portfolios for companies. He has no experience with consumers, with consumer surveys, with comparing consumer products and what constitutes consumer confusion. Consequently, he has no traditional expertise with respect to consumer confusion so as to provide a reasonable link between the information he uses and the conclusion he reaches. His opinions are, therefore, based on insufficient facts or data and as a result are unreliable and inadmissible.

## IV.

## CONCLUSION

This court is charged with the role of gatekeeper to only admit reliable expert opinion. As set forth above with respect to any opinion regarding the likelihood of confusion, Sarabia cannot substantiate his opinions with sufficient facts or data. As such, his opinion that there is a likelihood of confusion between defendant's and plaintiff's products is devoid of any imprimatur reliability. His opinion in this regard, therefore, is inadmissible and should be stricken.

Dated: April 8, 2005

ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
ROBERT P. ANDRIS
ELISE R. VASQUEZ
Attorneys for Defendant
SNAK CLUB

---

[1] Surveys are often used to show evidence of likelihood of confusion. (Union Carbide v. Ever-Ready, Inc., 531 F.2d 366, 382-383 (7th Cir. 1976); Exxon Corp. v. Texas Motor Exchange, Inc., 628 F.2d 500, 507 (5th Cir. 1980); RJR Foods, Inc. v. White Rock Corp., 603 F.2d 1058, 1061 (2nd Cir. 1979); James Burrough, Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 279 (7th Cir. 1976).; STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551 (N.D. Cal 1988).) In fact in this case, a market survey was Plaintiff's first line of attack to prove likelihood of confusion. Plaintiff failed to produce any survey in this regard, despite requesting an extension to oppose defendant's summary judgment motion for the primary purpose of presenting the market survey. From this, it is reasonable to draw the inference that, either it never intended to conduct such a survey or that it did and the results showed no likelihood of confusion.