IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALITY PACKAGING, INC., dba NATURE KIST SNACKS, | No. C 03-5240 SI |
| Plaintiff, | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SNAK CLUB, | |
| Defendant. _____/ | |
| AND RELATED COUNTERCLAIMS _____/ | |

On April 22, 2005, the Court heard oral argument on defendant's motion for summary judgment or, in the alternative, summary adjudication. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby DENIES the motion.

**BACKGROUND**

Plaintiff Quality Packaging, Inc. is a California corporation that does business as Nature Kist Snacks. Since 1964, plaintiff has distributed and sold snack foods that contain the phrase "FreshPak" on the packaging, which it registered as a trademark in 1990. In 1973, plaintiff began using vertical and horizontal stripe designs on its packaging; it registered the vertical stripes as a design mark in 1997. At this time, plaintiff sells peanuts and sunflower seeds in packaging containing the trademarks described above.

Defendant Snak Club is a California Corporation that manufactures, distributes, and sells a variety of products, including processed nuts and seeds. In 2002, defendant began to market products that were

packaged by "flushing" the packaging with nitrogen, in order to remove the oxygen and increase the shelf-life of the product. Defendant placed the term "Fresh Pack" on the products that were nitrogen flushed. The packaging for these products also contained vertical stripes. See Vasquez Decl., Exs. H, J.

When it learned about defendant's use of the phrase "Fresh Pack" and vertical stripes in its packaging, plaintiff sent a cease and desist letter to defendant. However, the parties were unable to resolve the dispute independently and plaintiff filed a complaint in this Court on November 24, 2003, alleging: 1) unfair competition; 2) declaratory relief regarding defendant's use of plaintiff's trademarks; 3) trademark infringement; 4) violation of Lanham Act; 5) injury to reputation and dilution of distinctive quality; and 6) unfair business practices.

Defendant now brings a motion for summary judgment, asserting that its use of "Fresh Pack" is protected by fair use and that its vertical stripe packaging design is "markedly dissimilar" from plaintiff's design mark, thus precluding a jury verdict in plaintiff's favor. It is this motion that is before the Court today.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. See id. at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the

1  non-moving party, and all justifiable inferences are to be drawn in its favor. Id. at 255. "Credibility
2  determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury
3  functions, not those of a judge [when she] is ruling on a motion for summary judgment." Id.

## DISCUSSION

**1.    Summary judgment based on defense of fair use**

Defendant argues that it is entitled to summary judgment in its favor as to plaintiff's claims regarding the "Fresh Pak" trademark based on the affirmative defense of fair use under 15 U.S.C. § 1115(b)(4). Defendant asserts that it is entitled to the fair use defense because the phrase "Fresh Pack" is used as a descriptive phrase in its products and the use of the phrase is fair and in good faith.

15 U.S.C. § 1115(b)(4) allows the affirmative defense of fair use when "the use of the . . . term . . . charged to be an infringement is a use, otherwise than as a mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such a party." Therefore, to establish a fair use defense defendant must prove: 1) that the term is not used as a trademark; 2) that the term is only used to describe the goods; and 3) that the term is used fairly and in good faith. Cairns v. Franklin Mint Co., 292 F.3d 1139, 1151 (9th Cir. 2002).

**A.    Descriptive use**

Defendant argues that the location and context of "Fresh Pack" in its packaging demonstrate that the term is used descriptively. The phrase is found in the upper left corner of the package with a unique font and a smaller print size than the phrases "Snak Club" and "HONEY CASHEWS," which are prominently featured in the middle of the package. See Vasquez Decl., Ex. J. In the upper right corner of the packaging is the phrase "BEST VALUE." The phrase "A TREAT IN ITSELF" is located below the phrases "Snak Club" and "HONEY CASHEWS."

Defendant asserts that the phrase "Fresh Pack" represents the nitrogen-flushing of the packaging. By flushing with nitrogen and then sealing the product in the package, oxygen is removed from the package, which extends the shelf-life of the product. Vasquez Decl., Ex. F at 45. Defendant's products that are nitrogen

3

flushed and sealed contain the "Fresh Pack" term. Id. at 32. However, plaintiff presents evidence that all of defendant's products that contain the "Fresh Pack" phrase are cooked, roasted or processed. Bowles Decl., Ex. F at 105-107. Under Federal Department of Agriculture regulations, the term "fresh" represents "that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation." 21 C.F.R. § 101.95.

Based on this evidence and the manner in which defendant utilizes the phrase "Fresh Pack" on its packaging, the Court finds that summary judgment is not appropriate in favor of defendant on the issue of whether the term is used to describe the goods. On the record before the Court, defendant's assertion that the phrase "Fresh Pack" is used to explain the nitrogen-flushing process, see Morshed Decl. at ¶ 11, cannot be found correct as a matter of law. Although defendant provides substantial evidence regarding the nitrogen-flushing process, the packaging itself contains no other information regarding the packaging process other than the phrase "Fresh Pack." See Vasquez Decl., Ex. J. In fact, the term "Fresh Pack" does nothing to explain to the consumer how the product is packaged and instead gives an unsubstantiated statement that the product is a "Fresh Pack." Defendant has not presented any evidence that consumers understand the phrase "Fresh Pack" to convey the message that the package is nitrogen-flushed. See Sands, Taylor & Wood Company v. Quaker Oats, 978 F.2d 947, 953 (2nd Cir. 1992) (holding that defendant created issue of fact regarding the descriptiveness of the phrase in question by presenting evidence that "Thirst Aid" conveyed the message that Gatorade helps quench thirst).

Plaintiff has presented several possible phrases that defendant could have used to describe the packaging process and, although they are less appealing to the ear, are substantially more informative about the packaging process. Therefore, defendant has not presented enough evidence to demonstrate, as a matter of law, that "Fresh Pack" is used descriptively in its products.

### B. Use as a trademark

Defendant argues that "Fresh Pack" is not used as a trademark on its products because it is not labeled as a trademark and the phrase is not prominently displayed on the packaging. Defendant asserts that the term "Fresh Pack" never appears without the "Snak Club" and "A TREAT IN ITSELF" trademarks. However,

4

1 the fact that the phrase always appears with defendant's trademarks "does not preclude a finding that [defendant] also uses ["Fresh Pack"] as a trademark." Sands, Taylor & Wood Company v. Quaker Oats, 978 F.2d 947, 954 (2nd Cir. 1992). In fact, "the conjunction of defendant's trademark and the allegedly infringed term may actually increase the misappropriation by linking defendant's name to plaintiff's goodwill." Id.

In order to determine whether the defendant's use is as a trademark, the Court must consider: "1) Is the term is used to attract public attention? 2) Is the term a prominent element of the package? 3) Is the phrase a different type size or style? 4) Is the term set off? 5) Does a subordinate phrase actually describe the product being sold?" Woodroast Systems Inc. v. Restaurants Unlimited Inc., 793 F.Supp. 906, 914 (D. Minn. 1992).

Defendant has not proven as a matter of law that these factors turn in its favor. The phrase is in a different type size and style than the all other writing on the packaging. The phrase is located very close to the "Snak Club" trademark, and a jury could find that it is prominently displayed at the top of the package. Additionally, the phrase "Fresh Pack" is the only writing in bright red type.

Defendant argues that summary judgment is appropriate in this case, relying on Wonder Labs, Inc. v. Procter & Gamble Company, 728 F.Supp. 1058 (S.D.N.Y. 1990). In Wonder Labs, plaintiff possessed a registered trademark for the phrase "DENTISTS CHOICE" for use on toothbrushes. Defendant used the phrase "the dentists' choice" in advertising and promotion of its Crest toothpaste. Plaintiff brought a claim of trademark infringement and the Court found that the fair use defense applied to defendant because the phrase described that Crest toothpaste was recommended by dentists.

However, defendant's use of "Fresh Pack" in this case is very different. In Wonder Labs, the phrase "the dentists' choice" was "often followed by explanatory phrases such as 'for fighting cavities' and is always displayed in conjunction with other text." Id. at 1064. The advertisements that featured the phrase "the dentists' choice" included endorsements by the American Dental Association and other textual references to dentists' recommendations and endorsements. Id. at 1061. Defendant in this case provides none of the context described in Wonder Labs. Nowhere in the packaging is an explanation of the nitrogen-flushing process or any other reference to increased shelf-life. Therefore, Wonder Labs is not applicable.

5

1  Instead, the jury could find that defendant's use of "Fresh Pack" is as "an attention-getting symbol."
2  Sands, Taylor, 978 F.2d at 954. In Sands, Taylor, the court rejected defendant's fair use defense for the
3  phrase "Thirst Aid." Defendant, in an attempt to market and sell Gatorade, ran advertisements stating that
4  "Gatorade is Thirst Aid." Plaintiff owned the trademark for "THIRST-AID." The court found that defendant
5  used the phrase as a trademark because the advertisements did not use the phrase in a sentence describing
6  Gatorade. Id. Defendant also presented no evidence that its use of the phrase did not cause consumers to
7  associate it uniquely with Gatorade. Id. The court upheld the district court's determination as a matter of law
8  that defendant used the phrase as a trademark.

9  Taylor, Wood is applicable to the case before the Court today. Although the facts in the current case
10 are not as strong as in Taylor, Wood, they are sufficient to deny defendant's motion for summary judgment.
11 As in Taylor, Wood, defendant's use of "Fresh Pack" is not included in any sentence describing the packaging
12 process. Defendant has presented no evidence regarding consumer's association with the phrase and its
13 products. Although "Fresh Pack" is not larger than "Snak Club," as the infringing phrase was in Taylor, Wood,
14 it is larger than most of the type on the packaging. Therefore, the Court must DENY defendant's motion for
15 summary judgment because it has not demonstrated as a matter of law that its use of "Fresh Pack" is
16 descriptive and not a trademark.

18 **2.    Summary judgment based on non-infringement**

19 Defendant argues that it is entitled to a judgment of non-infringement for plaintiff's claims regarding the
20 striped design mark. Specifically, defendant asserts that the marks are so dissimilar that it is entitled to
21 judgment of non-infringement. Defendant also argues that plaintiff has not presented any evidence of actual
22 confusion, and that the proximity of the goods and the likelihood of expansion factors turn in its favor.

23 In determining trademark infringement, the core element is the likelihood of confusion. E & J Gallo
24 Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992). In order to determine the likelihood of
25 confusion, the Court applies several factors: "1) strength of plaintiff's mark; 2) relatedness of the goods; 3)
26 similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) likely degree of
27 purchaser care; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines."

6

1 AMF v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).

2 Plaintiff's design mark consists of about 15 vertical stripes alternating between white and another color. See Vasquez Decl., Exs. H, I. The mark also contains a large oval in the center of the design, with a large shape attached to the top of the oval, presumably to contain the product information. Id. Defendant's allegedly infringing design consists of numerous vertical stripes of alternating color. See Vasquez Decl., Ex. J. Instead of the oval shaped window contained in plaintiff's design, defendant's design contains a rectangular window in a similar location. Defendant's design also includes a rectangular shape above the window that contains the product information. Id.

Defendant primarily argues that it is entitled to summary judgment because the marks are dissimilar. Defendant, in its reply, briefly addresses AMF factors of the evidence of actual confusion, the likelihood of expansion, and the marketing channels used. Defendant fails to discuss any other factors. However, this Court must consider all the AMF factors because "failure to weigh all of the relevant factors in determining likelihood of confusion constitutes reversible error." Beer Nuts, Inc. v. Clover Club Foods Company, 711 F.2d 934, 943 (10th Cir. 1983) ("Beer Nuts I").

Plaintiff has presented evidence that both parties sell nuts and seeds, which demonstrates the relatedness of the goods. See Sarabia Decl. at ¶ 13. Plaintiff has also presented evidence that the parties are direct competitors "who sell their products through the same marketing channels to the same retailers." Mozingo Decl. at ¶ 5. Additionally, plaintiff has demonstrated that the snack food industry contains a low degree of purchaser care because of the low cost and disposable nature of the product. Sarabia Decl. at ¶ 5. Courts have also recognized that consumers exercise little care in purchasing a small, inexpensive item such as nuts. Beer Nuts, Inc. v. Clover Club Foods Company, 805 F.2d 920, 926 (10th Cir. 1986) ("Beer Nuts II"). Finally, plaintiff has also presented evidence that there was a likelihood of expansion of the "FreshPak" product to include 18 to 20 new products in 2004. Mozingo Decl. at ¶¶ 6-7. However, these plans were postponed once plaintiff became aware of the defendant's allegedly infringing packaging. Id.

Plaintiff also presented evidence of actual confusion. Two witnesses testified that they were confused when they saw defendant's product because of its similarity to plaintiff's product. See Bowles Decl., Ex. D at 41-44; Bowles Decl., Ex. E at 41-42, 47. Although defendant presents several examples of the shallowness

7

of plaintiff's evidence, plaintiff has presented some evidence of actual confusion, which is sufficient for purposes of summary judgment.

Therefore, most of the AMF factors favor plaintiff, at least when the evidence is viewed in the light most favorable to plaintiff, the non-moving party, and all justifiable inferences are drawn in its favor. Defendant asserts that there is no similarity of the marks and that defendant is entitled to summary judgment on this basis alone. However, given that the items are inexpensive and similar, plaintiff is required to demonstrate only a "small degree" of similarity between the two marks. Beer Nuts II, 805 F.2d at 925.

Defendant is correct to point out that the size of the stripes is significantly different and that the viewing windows contain different shapes. However, defendant has not provided any evidence that either "Snak Club" or "Fresh Pack" is a well known trade name. If defendant could demonstrate the presence of well-known trade names, that would "significantly reduce[], if not altogether eliminate[], any likelihood of confusion." Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 47. Given plaintiff's strength in the other AMF factors and that defendant has not demonstrated the strength of either trade name, the Court cannot find as a matter of law that the designs are so dissimilar that defendant is entitled to judgment of non-infringement. Both products feature vertical stripes and a large viewing window in the center of the package. See Vasquez Decl., Exs. H, J. Both products contain "PEANUTS" or "HONEY CASHEWS" directly above the viewing window. Therefore, the Court DENIES defendant's motion for summary judgment.[1]

**4. Defendant's objections**

**A. Sarabia declaration**

Defendant argues that the Sarabia Declaration is an inadmissible expert opinion under Federal Rule of Evidence 702. Specifically, defendant contends that Sarabia's statement that there is a likelihood of confusion between defendant's and plaintiff's products is not based on sufficient facts or data. Defendant argues that

---

[1] Given its holding, the Court also DENIES defendant's motion for summary judgment against plaintiff's first cause of action for unfair competition.

8

Sarabia has no expertise in the field of customer confusion, nor has he spoken with any consumers.

Plaintiff provides no opposition to defendant's objection; however, the Court finds that the Sarabia Declaration is valid under Rule 702 and OVERRULES defendant's objection. Defendant argues that Sarabia relied upon insufficient facts and data; however, he listed a variety of sources relied upon in formulating his opinion. See Sarabia Decl., Ex. A.

Weakness in the factual basis of an expert witness' opinion generally "bear on the weight of the evidence rather than the admissibility." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 801 (6th Cir. 2000). The Ninth Circuit has recognized that "after Daubert, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." S.M. v. J.K., 262 F.3d 914, 922 (9th Cir. 2001). Therefore, the Court finds that the appropriate course of action is to allow defendant to present contrary evidence, rather than ruling the Sarabia Declaration inadmissible.

### B. Other objections

Defendant also brings a series of objections to various submissions by plaintiff. See Def.'s Objections to Plaintiff's Evidence. The Court finds that ruling on these objections is unnecessary, as defendant's motion will be denied even if all the evidence subject to defendant's objections is excluded.

///

///

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion for summary judgment. [Docket #40, 56, 57.]

**IT IS SO ORDERED.**

9

Dated: April 22, 2005                                    S/Susan Illston
                                                        SUSAN ILLSTON
                                                        United States District Judge